IN THE CIRCUIT COURT
OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA

JUDY TARIFENO                                        CASE NO.:

      Plaintiff(s),

v.

EVANSTON INSURANCE COMPANY,

      Defendant.

_____/

## COMPLAINT

Plaintiff, Judy Tarifeno ("Ms. Tarifeno"), sue Defendant, Evanston Insurance Company (the "Insurance Company"), and allege:

1.      This is an action for damages in excess of $50,000 exclusive of interest, costs, and attorneys' fees.

2.      At all material times, Ms. Tarifeno resided in Lee County, Florida.

3.      The Insurance Company is a foreign corporation licensed to do business in Florida and is conducting business in Lee County, Florida.

4.      At all material times, the Ms. Tarifeno entered into an insurance contract with the Insurance Company bearing policy number MHL-0016634 (the "Policy") that insured the Ms. Tarifeno home located at 244 Southwest 31st Terrace, Cape Coral, FL 33914. (the "Home"). A copy of the insurance policy is attached as Exhibit A.

5.      The Policy was issued on September 21, 2022.

6.      On or about September 28, 2022, the Home suffered substantial damage as a result of Hurricane Ian.

7.      The Policy provided coverage for all the losses, damages, and expenses that the Ms.

Tarifeno suffered and incurred.

8.      In accordance with the terms and conditions of the Policy, the Ms. Tarifeno timely notified the Insurance Company of their claim.

9.      The Insurance Company acknowledged the Ms. Tarifeno claim and assigned it claim number 22C8151 (the "Claim").

10.     The Insurance Company subsequently issued payment to the Ms. Tarifeno for a nominal portion of the Claim thereby acknowledging coverage for the claim, but grossly undervaluing the claim. A copy of the Insurance Company's letter acknowledging coverage for the Claim is attached as Exhibit B.

11.     To date, however, the Insurance Company has failed and refused to fully compensate Ms. Tarifeno for the damage to her home resulting from the Claim.

12.     At least 10 days prior to bringing the instant action, the Ms. Tarifeno submitted a Notice of Intent to Initiate Litigation for the Claim in compliance with Section 627.70152(5), Florida Statutes.

13.     Ms. Tarifeno has complied with all terms and conditions of the Policy, and all conditions precedent to the bringing of this action have been performed, waived, or excused.

14.     Ms. Tarifeno hired undersigned counsel to represent her in this action and are obligated to pay their attorneys a reasonable fee for their services.

15.     Pursuant to Section 627.428, Florida Statutes, the Ms. Tarifeno are entitled to recover the legal fees incurred in bringing this action.

## COUNT I
## BREACH OF CONTRACT

16.     Ms. Tarifeno adopt and reallege paragraphs 1 through 15 above.

17.     By failing to adjust the Claim with the Ms. Tarifeno pursuant to the Policy's "Loss

Payment" provision, and by failing to fully compensate Ms. Tarifeno for the Claim, the Insurance Company has breached the Policy.

18.    As a result of the Insurance Company's breach of the Policy, Ms. Tarifeno have suffered damages, exclusive of costs and attorneys' fees, in excess of the jurisdictional limits of this Court.

WHEREFORE, Ms. Tarifeno demand entry of a judgment in their favor and against the Insurance Company for damages in excess of the jurisdictional limits of this Court, together with pre-and post-judgment interest, attorneys' fees, costs, and such other relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Ms. Tarifeno demand a trial by jury of all issues so triable as a matter of right.

Dated this 2nd day of May, 2024.

**MARANGES, PLLC**
*Counsel for Plaintiffs*
2255 Glades Road, Suite 324A
Boca Raton, Florida 33431
Telephone: (561) 210-9151
Facsimile: (954) 337-5855

By: /s/Teresita M. Perez
Teresita M. Perez
Florida Bar No. 56754
tere@marangeslaw.com
Christopher J. Maranges
Florida Bar No. 69875
chris@marangeslaw.com

# EXHIBIT A



**MARKEL®**

### CERTIFICATION

I, **Phillip Armstrong**, as representative of **Evanston Insurance Company**, certify that the attached documents are a true and correct copy of Policy Number **MLH-0016634.**

Signature:

Title: **Service Support Technician**

Date: **12/12/2022**

SUBSCRIBED and SWORN TO before me on this ___ day of _____ 2022

Notary Public in and for the
State of **Virginia**
County of **Henrico**

My commission expires: **April 30th, 2023**

# quickhome

**9020 Stony Point Pkwy, Ste 450,**
**Richmond VA 23235**
**1-877-275-9578 or 1-804-330-4652**
**Fax 1-804-330-9485**
www.quickhome.com

## Adverse Action Notice

Thank you for giving us the opportunity to be your insurance provider. In compliance with the Fair Credit Reporting Act we are notifying you that the rate we assigned to your insurance policy is not our lowest rate. In order to provide each of our policyholders with the most accurate rate, we use information obtained from consumer reporting agencies as part of our rating process.

The following factors were the primary influences on your credit-based insurance bureau score:

1. **Insufficient length of time of credit history**
2. **Unfavorable number of installments loan accounts**
3. **Accounts currently or in the past delinquent**
4. **Unfavorable number of accounts currently paid as agreed**

As provided in the Fair Credit Reporting Act, you are entitled to obtain a free copy of each of your consumer reports within sixty (60) days of receiving this notice. You will need to contact the consumer reporting agency directly to dispute the accuracy or completeness of any information included in your reports.

For questions about your insurance based credit score, please contact:

Equifax
P.O. Box 740241
Atlanta, GA 30374
Telephone: 800-685-1111
Web: www.equifax.com/fcra

Please note that none of the consumer reporting agencies listed above made any premium or rating decisions and it is unable to explain your policy premium.

## HOMEOWNERS POLICY DECLARATIONS

| | | |
|---|---|---|
| New Policy | **Evanston Insurance Company** | Policy No : **MLH-0016634** |
| Name Insured and Mailing Address | General Agent : RT Specialty | |
| Tarifeno, Judy | Insured's Producer : Meadowbrook, Inc. | |
| 244 Southwest 31st Terrace | 6000 Cattleridge Drive, Suite 300, Sarasota, FL, 34232 | |
| CAPE CORAL | Phone# - (941) 308 7232    Fax# - (941) 724 8858 | |
| LEE | | |
| FL | Agent Name    : Mike Bowerman | |
| 33914 | | |

Policy Period : **12 Months**             From : **09-21-2022**                          To : **09-21-2023**

12 01 A M Standard Time at the Described Location

This insurance applies to the Described Location, Coverage for which a Limit of Liability or Premium is shown and Perils Insured Against for which a premium is stated.

**The Residence Premises :**

| Property Coverages | Limits of Liability |
|---|---|
| A - Dwelling | $599,987 |
| B - Other Structures | $0 |
| C - Personal Property | $150,000 |
| D - Loss of Use | $0 |

**Optional Coverages**

| | |
|---|---|
| Water Damage Sublimit | $10,000 |
| Ordinance Or Law Coverage Amount | $59,999 |

| Liability Coverages | Limits of Liability |
|---|---|
| L - Personal Liability | $300,000 |
| M - Medical Payments to Others | $5,000 |

**Deductibles**

Property Deductible(s) : **$1,000**        Wind/Hail : **The greater of 5 % or $5,000**        Other Deductible :

Form(s) and endorsement(s) made a part of this policy for this location(s) :

**244 Southwest 31st Terrace , CAPE CORAL , FL , 33914**

### SEE HD1004-0708 - SCHEDULE OF FORMS AND ENDORSEMENTS

Mortgagee(s), Additional Insured(s) and Lienholder(s) made a part of this policy for this location(s) :

**PHH Mortgage Services ISAOA/ATIMA    P.O BOX - 5954        SPRINGFIELD , OH , 45501    # 7190474937**

**Rating Information :**

| | | |
|---|---|---|
| Occupancy : **Owner – Primary Residence** | Year of Construction : **2004** | Territory : **G** |
| Construction : **Masonry** | Number of Units : **Single Family** | Fire District or Town : **CAPE CORAL** |
| | Protection Class : **1** | |

| | |
|---|---|
| Basic Premium ( Property+Liability ) : | **$4,989.00** |
| Surplus Lines Tax : | **$264.98** |
| Stamp Fee : | **$3.22** |
| HurricaneCatastropeFee : | **$0.00** |
| DCA EMPA Residential Fee : | **$2.00** |
| Citizen Assesment Fee : | **$0.00** |
| Policy Fee : | **$250.00** |
| Inspection Fee : | **$125.00** |
| Total Premium : | **$5,634.20** |
| Minimum Earned Premium : | **25.0 %** |

THIS DECLARATION TOGETHER WITH THE POLICY JACKET, HOMEOWNERS POLICY FORM, AND ENDORSEMENTS, IF ANY,
ISSUED TO FORM A PART THEREOF, COMPLETES THE ABOVE NUMBERED HOMEOWNERS POLICY

Date : **09-26-2022**                By :

( KIERAN DEMPSEY )
Correspondent

ARF9122-0304

SURPLUS LINES AGENT : KIERAN DEMPSEY
LIC # W154061
10150 York Road, 5th floor
Hunt Valley, MD 21030
PROD. AGENT **Mike Bowerman**
Address **6000 Cattleridge Drive, Suite 300**
City **Sarasota** Zip **34232**
This insurance is issued pursuant to the Florida Surplus
Lines Law. Persons insured by surplus lines carriers do not
have the protection of the Florida Insurance Guaranty Act
to the extent of any right of recovery for the obligation of an
insolvent unlicensed insurer.
Quarter **3rd**
s Premium **$4,989.00** Tax **$264.98**

Agents Countersignature

| | |
|---|---|
| Stamp Fee: | $3.22 |
| DCA EMPA Residential Fee: | $2.00 |
| Policy Fee: | $250.00 |
| Inspection Fee: | $125.00 |
| FL SL Tax: | $264.98 |

# FLORIDA POLICYHOLDER NOTICE

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

**LAW AND ORDINANCE: LAW AND ORDINANCE COVERAGE IS AN IMPORTANT COVERAGE THAT YOU MAY WISH TO PURCHASE. PLEASE DISCUSS WITH YOUR INSURANCE AGENT.**

**FLOOD INSURANCE: YOU MAY ALSO NEED TO CONSIDER THE PURCHASE OF FLOOD INSURANCE. YOUR HOMEOWNER'S INSURANCE POLICY DOES NOT INCLUDE COVERAGE FOR DAMAGE RESULTING FROM FLOOD EVEN IF HURRICANE WINDS AND RAIN CAUSED THE FLOOD TO OCCUR. WITHOUT SEPARATE FLOOD INSURANCE COVERAGE, YOU MAY HAVE UNCOVERED LOSSES CAUSED BY FLOOD. PLEASE DISCUSS THE NEED TO PURCHASE SEPARATE FLOOD INSURANCE COVERAGE WITH YOUR INSURANCE AGENT.**

ONE OR MORE OF THE FOLLOWING MAY APPLY TO YOUR POLICY:

A

**THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE OR WIND LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

B

**THIS POLICY CONTAINAS A CO-PAY PROVISION THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

C

**THIS POLICY MAY EXCLUDE WIND THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

PLEASE REVIEW YOUR POLICY CAREFULLY AND CONTACT YOUR LICENSE AGENT IF YOU HAVE ANY QUESTIONS.



# ESSEX INSURANCE COMPANY
# EVANSTON INSURANCE COMPANY

---

## MINIMUM EARNED CANCELLATION PREMIUM

---

The following provision is added to the Cancellation Condition:

If You request cancellation of this policy, We will retain not less than ___**25.0 %**___ of the original premium.

AUTHORIZED REPRESENTATIVE                    DATE

| | | ENDORSEMENT NO. _____ |
|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12.01 A.M STANDARD TIME) | NAMED INSURED | AGENT NO. |
| MLH-0016634 | 09-21-2022 | Tarifeno, Judy | |

## SCHEDULE OF FORMS

| S.No | Document Identifier | - Version Date | Document Name |
|---|---|---|---|
| 1 | ARF9122 | - 0304 | HOMEOWNERS POLICY DECLARATION |
| 2 | HD1005 | - 0708 | MINIMUM EARNED CANCELLATION |
| 3 | HD1004 | - 0708 | SCHEDULE OF FORMS |
| 4 | HD1009 | - 0708 | BIOLOGICAL OR CHEMICAL MATERIALS EXCLUSION |
| 5 | HS1011 | - 0411 | AMENDATORY ENDORSEMENT |
| 6 | HS1012 | - 0708 | BUSINESS PURSUITS EXCLUSION |
| 7 | HD1000 | - 0608 | SERVICE OF SUIT CLAUSE |
| 8 | BRP300 | - 0307 | PRIVACY POLICY STATEMENT |
| 9 | HD1008 | - 0708 | WAR AND TERRORISM EXCLUSION ENDORSEMENT |
| 10 | HO0312 | - 1000 | WINDSTORM OR HAIL DEDUCTIBLE |
| 11 | HO0003 | - 1000 | HOMEOWNERS 3 - SPECIAL FORM |
| 12 | HD1002 | - 0708 | SCHEDULE OF MORTGAGEES |
| 13 | HS1017 | - 0411 | ANIMAL LIABILITY LIMITATION |
| 14 | HD1010 | - 0310 | TAINTED DRYWALL MATERIAL EXCLUSION |
| 15 | MPLH0514 | - 0519 | SPECIAL PROVISIONS - FLORIDA |
| 16 | MPLH0255 | - 0618 | WATER DAMAGE EXCLUSION AND LIMITED ADDITIONAL COVERAGE |
| 17 | HO2386 | - 0513 | PERSONAL PROPERTY REPLACEMENT COST LOSS SETTLEMENT - FLORIDA |
| 18 | MPLH0154 | - 0118 | POLICY SIGNATURE PAGE |

_____    /_____

AUTHORIZED REPRESENTATIVE          DATE

HD1004-0708

# ESSEX INSURANCE COMPANY

# EVANSTON INSURANCE COMPANY

## BIOLOGICAL OR CHEMICAL MATERIALS EXCLUSION

It is agreed that this Insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with the actual or threatened malicious use of pathogenic or poisonous biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto.

HD1009-0708



# ESSEX INSURANCE COMPANY
# EVANSTON INSURANCE COMPANY

## AMENDATORY ENDORSEMENT

The following are added under **SECTION I - EXCLUSIONS**:

**Electronic Data Exclusion Clause**
Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:

a.  This policy does not insure loss, damage, destruction, distortion, erasure, corruption or alteration of "electronic data" from any cause whatsoever (including but not limited to "computer virus") or loss of use, reduction in functionality, cost, expense of whatsoever nature resulting there from, regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

   "Electronic data" means facts, concepts and information converted to a form useable for communications, interpretation or processing by electronic and electromechanical data processing or electronically controlled equipment and includes programs, software and other coded instructions for the processing and manipulation of data or the direction and manipulation of such equipment.

   "Computer virus" means a set of corrupting, harmful or otherwise unauthorized instructions or code including a set of maliciously introduced unauthorized instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature. "Computer virus" includes but is not limited to 'Trojan Horses', 'worms' and 'time or logic bombs'.

b.  However, in the event that a peril listed below results from any of the matters described in paragraph a. above, this policy, subject to all its terms, conditions and exclusions, will cover physical damage occurring during the policy period to property insured by this policy directly caused by such listed peril.

   Listed Perils
       Fire
       Explosion

**Electronic Data Processing Media Valuation Clause**
Notwithstanding any provision to the contrary within the policy or any endorsement thereto, it is understood and agreed as follows:

Should electronic data processing media insured by this policy suffer physical loss or damage insured by this policy, then the basis of valuation shall be the cost of the blank media plus the costs of copying the "electronic data" from back-up or from originals of a previous generation. These costs will not include research and engineering or any costs of recreating, gathering or assembling such "electronic data". If the media is not repaired, replaced or restored the basis of valuation shall be the cost of the blank media. However this policy does not insure any amount pertaining to the value of such "electronic data" to the Assured or any other party, even if such "electronic data" cannot be recreated, gathered or assembled.

The following is added under **SECTION I - CONDITIONS**:

**Total or Constructive Loss Clause**
It is understood and agreed that in the event of a total loss or constructive total loss under the policy, the entire policy premium shall be earned in full and no return premium shall be due the named insured.

HS1011-0411

The following are added under **SECTION II - EXCLUSIONS**:

**Pollution**
1. "Bodily injury" or "property damage" arising out of the actual, alleged, or threatened discharge, dispersal, release, or escape of pollutants:
   a. At or from premises owned, rented, or occupied by the named insured;
   b. At or from any site or location used by or for the named insured or others for the handling, storage, disposal, processing, or treatment of waste;
   c. Which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for the named insured or any person or organization for whom the named insured may be legally responsible; or
   d. At or from any site or location on which the named insured or any contractors or subcontractors working directly or indirectly on behalf of the named insured are performing operations;
      1) If the pollutants are brought on or to the site or location in connection with such operations, or
      2) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize the pollutants.

2. Any loss, cost, or expense arising out of any governmental direction or request that the named insured test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize pollutants.

   "Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.

   This exclusion does not apply to "bodily injury" or "property damage" caused by heat, smoke, or fumes from hostile fire. As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

**Lead**
This endorsement excludes occurrences at the "insured location" which result in:
   a. "Bodily injury" arising out of the ingestion, inhalation or absorption of lead in any form;
   b. "Property damage" arising from any form of lead;
   c. Any loss, cost or expense arising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or
   d. Any loss, cost or expense arising out of any claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

**Microorganism**
This policy does not insure any loss, damage, claim, cost, expense or other sum directly or indirectly arising out of or relating to mold, mildew, fungus, spores or other microorganism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health.

This exclusion applies regardless whether there is:
   a. any physical loss or damage to insured property;
   b. any insured peril or cause, whether or not contributing concurrently or in any sequence;
   c. any loss of use, occupancy, or functionality; or
   d. any action required, including but not limited to repair, replacement, removal, cleanup, abatement, disposal, relocation, or steps taken to address medical or legal concerns.

HS1011-0411

**Trampoline**
**Coverage E – Personal Liability** and **Coverage F – Medical Payments to Others** do not apply to any "bodily injury", "property damage", and other loss or expense arising out of any "occurrence" involving any trampoline owned by, or in the care, custody, or control of any "insured".

These exclusions apply both on and off the "insured premises".

All other provisions of this policy apply.



**ESSEX INSURANCE COMPANY**

**EVANSTON INSURANCE COMPANY**

---

| BUSINESS PURSUITS EXCLUSION |
| --- |

Exclusion **E.2 "Business"** of **SECTION II—EXCLUSIONS** is deleted and replaced with the following:

1. Coverage does not apply to **bodily injury, property damage** or **medical payments** arising out of YOUR business pursuits. This includes:
   a. The rental or holding for rental of any part of any premises by YOU; or
   b. Home day care services provided by an "insured" to a person or persons other than "insureds" when monetary or other consideration for such services is received by an "insured." Mutual exchange of home day care services is not consideration for the purposes of this exclusion. The rendering of home day care services by an "insured" to a relative of an "insured" is not considered business pursuits.

This exclusion does not apply to:
   (1) Activities which are ordinarily incidental to non-business pursuits; or
   (2) The rental or holding for rental of a residence of YOURS:
      (a) on an occasional basis for the exclusive use as a residence;
      (b) in part, unless intended for use as a residence by more than two roomers or boarders; or
      (c) in part, as an office, school, studio or private garage.



# ESSEX INSURANCE COMPANY
# EVANSTON INSURANCE COMPANY

**MARKEL**

---

## SERVICE OF SUIT

---

Pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Company hereby designates the following its true and `lawful attorney, upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the "insured" under this policy: the Superintendent, Commissioner, Director of Insurance, or other officer specified for that purpose in the statute, or his or her successors in office, or other designated agent for service of process.

HD1000-0608



**ESSEX INSURANCE COMPANY**

**EVANSTON INSURANCE COMPANY**

| PRIVACY POLICY |
| --- |

We'd like to thank you for your business and let you know we respect your privacy. We are committed to protecting your personal information.

We collect nonpublic information about you from the following sources:
- Information we receive from you on applications or other forms,
- Information about your transactions with us, our affiliates or others, and
- Information we receive from a consumer reporting agency.

We do not disclose any nonpublic personal information about our customers or former customers to anyone, except as permitted by law.

We may disclose nonpublic personal information about you to third party financial service providers, such as insurance agents and/or brokers.

We may also disclose nonpublic personal information about you to third party non-financial companies, such as direct marketers, for the purpose of marketing our own products and services to you.

We may also disclose nonpublic personal information about you to non-affiliated third parties as permitted by law.

We restrict access to nonpublic personal information about you to those employees who need to know that information to provide products or services to you. We maintain physical, electronic, and procedural safeguards that comply with federal standards to guard your nonpublic personal information.

For further information, please contact us at information@markelcorp.com.



**ESSEX INSURANCE COMPANY**

**EVANSTON INSURANCE COMPANY**

## WAR AND TERRORISM EXCLUSION ENDORSEMENT

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss;

1. war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

2. any act of terrorism.

   For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to 1 and/or 2 above.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

POLICY NUMBER : MLH-0016634                                          HOMEOWNERS
                                                                    HO0312-1000

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WINDSTORM OR HAIL PERCENTAGE DEDUCTIBLE
### All Forms Except HO 00 04 And HO 00 06

#### SCHEDULE*

| Windstorm Or Hail Deductible Percentage Amount: |
|---|
| |

*Entry may be left blank if shown elsewhere in this policy for this coverage.

**DEDUCTIBLE**

The following special deductible is added to the policy:

With respect to the peril of Windstorm Or Hail, we will pay only that part of the total of all loss payable under Section I that exceeds the windstorm or hail percentage deductible.

The dollar amount of the windstorm or hail deductible is determined by multiplying the Coverage **A** limit of liability shown in the Declarations by the deductible percentage amount shown in the Schedule above.

No other deductible in the policy applies to loss caused by windstorm or hail.

All other provisions of this policy apply.

HO0312-1000                    Copyright, Insurance Services Office, Inc., 1999

HOMEOWNERS
HO 00 03 10 00

# HOMEOWNERS 3 – SPECIAL FORM

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

**A.** In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

**B.** In addition, certain words and phrases are defined as follows:

**1.** "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in **b.** below, mean the following:

**a.** Liability for "bodily injury" or "property damage" arising out of the:

**(1)** Ownership of such vehicle or craft by an "insured";

**(2)** Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

**(3)** Entrustment of such vehicle or craft by an "insured" to any person;

**(4)** Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

**(5)** Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

**b.** For the purpose of this definition:

**(1)** Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

**(2)** Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

**(3)** Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

**(4)** Motor vehicle means a "motor vehicle" as defined in **7.** below.

**2.** "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

**3.** "Business" means:

**a.** A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

**b.** Any other activity engaged in for money or other compensation, except the following:

**(1)** One or more activities, not described in **(2)** through **(4)** below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

**(2)** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

**(3)** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

**(4)** The rendering of home day care services to a relative of an "insured".

**4.** "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

**5.** "Insured" means:

**a.** You and residents of your household who are:

**(1)** Your relatives; or

**(2)** Other persons under the age of 21 and in the care of any person named above;

**b.** A student enrolled in school full time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

**(1)** 24 and your relative; or

**(2)** 21 and in your care or the care of a person described in **a.(1)** above; or

 Copyright, Insurance Services Office, Inc., 1999

**c.** Under Section **II**:

**(1)** With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **a.** or **b.** above. "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

**(2)** With respect to a "motor vehicle" to which this policy applies:

**(a)** Persons while engaged in your employ or that of any person included in **a.** or **b.** above; or

**(b)** Other persons using the vehicle on an "insured location" with your consent.

Under both Sections **I** and **II**, when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

**6.** "Insured location" means:

**a.** The "residence premises";

**b.** The part of other premises, other structures and grounds used by you as a residence; and

**(1)** Which is shown in the Declarations; or

**(2)** Which is acquired by you during the policy period for your use as a residence;

**c.** Any premises used by you in connection with a premises described in **a.** and **b.** above;

**d.** Any part of a premises:

**(1)** Not owned by an "insured"; and

**(2)** Where an "insured" is temporarily residing;

**e.** Vacant land, other than farm land, owned by or rented to an "insured";

**f.** Land owned by or rented to an "insured" on which a one, two, three or four family dwelling is being built as a residence for an "insured";

**g.** Individual or family cemetery plots or burial vaults of an "insured"; or

**h.** Any part of a premises occasionally rented to an "insured" for other than "business" use.

**7.** "Motor vehicle" means:

**a.** A self-propelled land or amphibious vehicle; or

**b.** Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in **a.** above.

**8.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

**a.** "Bodily injury"; or

**b.** "Property damage".

**9.** "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

**10.** "Residence employee" means:

**a.** An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

**b.** One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

**11.** "Residence premises" means:

**a.** The one family dwelling where you reside;

**b.** The two, three or four family dwelling where you reside in at least one of the family units; or

**c.** That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

     Copyright, Insurance Services Office, Inc., 1999     **HO 00 03 10 00**

## DEDUCTIBLE

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under Section I that exceeds the deductible amount shown in the Declarations.

## SECTION I – PROPERTY COVERAGES

### A. Coverage A – Dwelling

1. We cover:

   a. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

   b. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

2. We do not cover land, including land on which the dwelling is located.

### B. Coverage B – Other Structures

1. We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

2. We do not cover:

   a. Land, including land on which the other structures are located;

   b. Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

   c. Other structures from which any "business" is conducted; or

   d. Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

3. The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage **A**. Use of this coverage does not reduce the Coverage **A** limit of liability.

### C. Coverage C – Personal Property

1. **Covered Property**

   We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:

   a. Others while the property is on the part of the "residence premises" occupied by an "insured"; or

   b. A guest or a "residence employee", while the property is in any residence occupied by an "insured".

2. **Limit For Property At Other Residences**

   Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage **C**, or $1,000, whichever is greater. However, this limitation does not apply to personal property:

   a. Moved from the "residence premises" because it is being repaired, renovated or rebuilt and is not fit to live in or store property in; or

   b. In a newly acquired principal residence for 30 days from the time you begin to move the property there.

3. **Special Limits Of Liability**

   The special limit for each category shown below is the total limit for each loss for all property in that category. These special limits do not increase the Coverage **C** limit of liability.

   a. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

   b. $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

   This limit includes the cost to research, replace or restore the information from the lost or damaged material.

**c.** $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

**d.** $1,500 on trailers or semitrailers not used with watercraft of all types.

**e.** $1,500 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

**f.** $2,500 for loss by theft of firearms and related equipment.

**g.** $2,500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollow-ware, tea sets, trays and trophies made of or including silver, gold or pewter.

**h.** $2,500 on property, on the "residence premises", used primarily for "business" purposes.

**i.** $500 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to loss to electronic apparatus and other property described in Categories **j.** and **k.** below.

**j.** $1,500 on electronic apparatus and accessories, while in or upon a "motor vehicle", but only if the apparatus is equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category **j.**

**k.** $1,500 on electronic apparatus and accessories used primarily for "business" while away from the "residence premises" and not in or upon a "motor vehicle". The apparatus must be equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category **k.**

**4. Property Not Covered**

We do not cover:

**a.** Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

**b.** Animals, birds or fish;

**c.** "Motor vehicles".

**(1)** This includes:

**(a)** Their accessories, equipment and parts; or

**(b)** Electronic apparatus and accessories designed to be operated solely by power from the electrical system of the "motor vehicle". Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described above.

The exclusion of property described in **(a)** and **(b)** above applies only while such property is in or upon the "motor vehicle".

**(2)** We do cover "motor vehicles" not required to be registered for use on public roads or property which are:

**(a)** Used solely to service an "insured's" residence; or

**(b)** Designed to assist the handicapped;

**d.** Aircraft meaning any contrivance used or designed for flight including any parts whether or not attached to the aircraft.

We do cover model or hobby aircraft not used or designed to carry people or cargo;

**e.** Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flare-craft and air cushion vehicles;

**f.** Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

**g.** Property in an apartment regularly rented or held for rental to others by an "insured", except as provided in **E.10.** Landlord's Furnishings under Section **I** – Property Coverages;

**h.** Property rented or held for rental to others off the "residence premises";

**i.** "Business" data, including such data stored in:

**(1)** Books of account, drawings or other paper records; or

**(2)** Computers and related equipment.

We do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market;

**j.** Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages; or

**k.** Water or steam.

## D.  Coverage D – Loss Of Use

The limit of liability for Coverage **D** is the total limit for the coverages in **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use below.

### 1.  Additional Living Expense

If a loss covered under Section **I** makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

### 2.  Fair Rental Value

If a loss covered under Section **I** makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

Payment will be for the shortest time required to repair or replace such premises.

### 3.  Civil Authority Prohibits Use

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in **1.** Additional Living Expense and **2.** Fair Rental Value above for no more than two weeks.

### 4.  Loss Or Expense Not Covered

We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use above are not limited by expiration of this policy.

## E.  Additional Coverages

### 1.  Debris Removal

**a.** We will pay your reasonable expense for the removal of:

(1) Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

(2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

**b.** We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

(1) Your tree(s) felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

(2) A neighbor's tree(s) felled by a Peril Insured Against under Coverage **C;**

provided the tree(s):

(3) Damage(s) a covered structure; or

(4) Does not damage a covered structure, but:

(a) Block(s) a driveway on the "residence premises" which prevent(s) a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

(b) Block(s) a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage is additional insurance.

### 2.  Reasonable Repairs

**a.** We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

**b.** If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

    **(1)** Increase the limit of liability that applies to the covered property; or

    **(2)** Relieve you of your duties, in case of a loss to covered property, described in **B.4.** under Section I – Conditions.

**3. Trees, Shrubs And Other Plants**

We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

  **a.** Fire or Lightning;

  **b.** Explosion;

  **c.** Riot or Civil Commotion;

  **d.** Aircraft;

  **e.** Vehicles not owned or operated by a resident of the "residence premises";

  **f.** Vandalism or Malicious Mischief; or

  **g.** Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

**4. Fire Department Service Charge**

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

**5. Property Removed**

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

**6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**

  **a.** We will pay up to $500 for:

    **(1)** The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

    **(2)** Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

    **(3)** Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

    **(4)** Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

This coverage is additional insurance. No deductible applies to this coverage.

  **b.** We do not cover:

    **(1)** Use of a credit card, electronic fund transfer card or access device:

      **(a)** By a resident of your household;

      **(b)** By a person who has been entrusted with either type of card or access device; or

      **(c)** If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

    **(2)** Loss arising out of "business" use or dishonesty of an "insured".

  **c.** If the coverage in **a.** above applies, the following defense provisions also apply:

    **(1)** We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

    **(2)** If a suit is brought against an "insured" for liability under **a.(1)** or **(2)** above, we will provide a defense at our expense by counsel of our choice.

    **(3)** We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under **a.(3)** above.

    Copyright, Insurance Services Office, Inc., 1999

**7. Loss Assessment**

a. We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage **A**, other than:

(1) Earthquake; or

(2) Land shock waves or tremors before, during or after a volcanic eruption.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

b. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

c. Paragraph **P.** Policy Period under Section **I** − Conditions does not apply to this coverage.

This coverage is additional insurance.

**8. Collapse**

a. With respect to this Additional Coverage:

(1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

(2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

(3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

(4) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

b. We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

(1) The Perils Insured Against named under Coverage **C**;

(2) Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

(3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

(4) Weight of contents, equipment, animals or people;

(5) Weight of rain which collects on a roof; or

(6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

c. Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **b.(2)** through **(6)** above, unless the loss is a direct result of the collapse of a building or any part of a building.

d. This coverage does not increase the limit of liability that applies to the damaged covered property.

**9. Glass Or Safety Glazing Material**

a. We cover:

(1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

(2) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

(3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

    Copyright, Insurance Services Office, Inc., 1999

   b. This coverage does not include loss:

     (1) To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

     (2) On the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided in **a.(2)** above. A dwelling being constructed is not considered vacant.

   c. This coverage does not increase the limit of liability that applies to the damaged property.

**10. Landlord's Furnishings**

We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for loss caused by a Peril Insured Against in Coverage **C**, other than Theft.

This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability applying to the damaged property.

**11. Ordinance Or Law**

   a. You may use up to 10% of the limit of liability that applies to Coverage **A** for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

     (1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

     (2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

     (3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

   b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

   c. We do not cover:

     (1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

     (2) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

       Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

**12. Grave Markers**

We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against under Coverage **C**.

This coverage does not increase the limits of liability that apply to the damaged covered property.

## SECTION I – PERILS INSURED AGAINST

**A. Coverage A – Dwelling And Coverage B – Other Structures**

**1.** We insure against risk of direct physical loss to property described in Coverages **A** and **B**.

**2.** We do not insure, however, for loss:

   a. Excluded under Section **I** – Exclusions;

   b. Involving collapse, except as provided in **E.8.** Collapse under Section **I** – Property Coverages; or

   c. Caused by:

     (1) Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

       (a) Maintain heat in the building; or

  **(b)** Shut off the water supply and drain all systems and appliances of water.

  However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

  For purposes of this provision a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

**(2)** Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

  **(a)** Fence, pavement, patio or swimming pool;

  **(b)** Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

  **(c)** Retaining wall or bulkhead that does not support all or part of a building or other structure; or

  **(d)** Pier, wharf or dock;

**(3)** Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**(4)** Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

**(5)** Mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

  **(a)** A plumbing, heating, air conditioning or automatic fire protective sprinkler system, or a household appliance, on the "residence premises"; or

  **(b)** A storm drain, or water, steam or sewer pipes, off the "residence premises".

  For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or

**(6)** Any of the following:

  **(a)** Wear and tear, marring, deterioration;

  **(b)** Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

  **(c)** Smog, rust or other corrosion, or dry rot;

  **(d)** Smoke from agricultural smudging or industrial operations;

  **(e)** Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage **C**.

  Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

  **(f)** Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

  **(g)** Birds, vermin, rodents, or insects; or

  **(h)** Animals owned or kept by an "insured".

**Exception To c.(6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage **A** or **B** resulting from an accidental discharge or overflow of water or steam from within a:

**(i)** Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

**(ii)** Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, down spout or similar fixtures or equipment.

Section I – Exclusion **A.3.** Water Damage, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under **c.(5)** and **(6)** above.

Under **2.b.** and **c.** above, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**B. Coverage C – Personal Property**

We insure for direct physical loss to the property described in Coverage **C** caused by any of the following perils unless the loss is excluded in Section **I** – Exclusions.

**1. Fire Or Lightning**

**2. Windstorm Or Hail**

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

**3. Explosion**

**4. Riot Or Civil Commotion**

**5. Aircraft**

This peril includes self-propelled missiles and spacecraft.

**6. Vehicles**

**7. Smoke**

This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

**8. Vandalism Or Malicious Mischief**

**9. Theft**

**a.** This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

**b.** This peril does not include loss caused by theft:

**(1)** Committed by an "insured";

**(2)** In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**(3)** From that part of a "residence premises" rented by an "insured" to someone other than another "insured"; or

**(4)** That occurs off the "residence premises" of:

**(a)** Trailers, semitrailers and campers;

**(b)** Watercraft of all types, and their furnishings, equipment and outboard engines or motors; or

**(c)** Property while at any other residence owned by, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured" who is a student is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 60 days immediately before the loss.

**10. Falling Objects**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

**11. Weight Of Ice, Snow Or Sleet**

This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

12. **Accidental Discharge Or Overflow Of Water Or Steam**

   a. This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

   b. This peril does not include loss:

   (1) To the system or appliance from which the water or steam escaped;

   (2) Caused by or resulting from freezing except as provided in Peril Insured Against **14.** Freezing;

   (3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

   (4) Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

   c. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

   d. Section I – Exclusion **A.3.** Water Damage, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

13. **Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging**

   This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

   We do not cover loss caused by or resulting from freezing under this peril.

14. **Freezing**

   a. This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:

   (1) Maintain heat in the building; or

   (2) Shut off the water supply and drain all systems and appliances of water.

   However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

   b. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

15. **Sudden And Accidental Damage From Artificially Generated Electrical Current**

   This peril does not include loss to tubes, transistors, electronic components or circuitry that are a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

16. **Volcanic Eruption**

   This peril does not include loss caused by earthquake, land shock waves or tremors.

## SECTION I – EXCLUSIONS

A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

   1. **Ordinance Or Law**

   Ordinance Or Law means any ordinance or law:

   a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion **A.1.a.** does not apply to the amount of coverage that may be provided for in **E.11.** Ordinance Or Law under Section I – Property Coverages;

   b. The requirements of which result in a loss in value to property; or

   c. Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

   Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

   This Exclusion **A.1.** applies whether or not the property has been physically damaged.

   2. **Earth Movement**

   Earth Movement means:

   a. Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

**b.** Landslide, mudslide or mudflow;

**c.** Subsidence or sinkhole; or

**d.** Any other earth movement including earth sinking, rising or shifting;

caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.

This Exclusion **A.2.** does not apply to loss by theft.

**3. Water Damage**

Water Damage means:

**a.** Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

**b.** Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

**c.** Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;

caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire, explosion or theft resulting from water damage is covered.

**4. Power Failure**

Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that peril.

**5. Neglect**

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

**6. War**

War includes the following and any consequence of any of the following:

**a.** Undeclared war, civil war, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**7. Nuclear Hazard**

This Exclusion **A.7.** pertains to Nuclear Hazard to the extent set forth in **M.** Nuclear Hazard Clause under Section **I** – Conditions.

**8. Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

**9. Governmental Action**

Governmental Action means the destruction, confiscation or seizure of property described in Coverage **A**, **B** or **C** by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

**B.** We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following. However, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**1.** Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **A.** above to produce the loss.

**2.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**3.** Faulty, inadequate or defective:

**a.** Planning, zoning, development, surveying, siting;

**b.** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**c.** Materials used in repair, construction, renovation or remodeling; or

**d.** Maintenance;

of part or all of any property whether on or off the "residence premises".

# SECTION I – CONDITIONS

## A. Insurable Interest And Limit Of Liability

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

**1.** To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

**2.** For more than the applicable limit of liability.

## B. Duties After Loss

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

**1.** Give prompt notice to us or our agent;

**2.** Notify the police in case of loss by theft;

**3.** Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages;

**4.** Protect the property from further damage. If repairs to the property are required, you must:

   **a.** Make reasonable and necessary repairs to protect the property; and

   **b.** Keep an accurate record of repair expenses;

**5.** Cooperate with us in the investigation of a claim;

**6.** Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

**7.** As often as we reasonably require:

   **a.** Show the damaged property;

   **b.** Provide us with records and documents we request and permit us to make copies; and

   **c.** Submit to examination under oath, while not in the presence of another "insured", and sign the same;

**8.** Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   **a.** The time and cause of loss;

   **b.** The interests of all "insureds" and all others in the property involved and all liens on the property;

   **c.** Other insurance which may cover the loss;

   **d.** Changes in title or occupancy of the property during the term of the policy;

   **e.** Specifications of damaged buildings and detailed repair estimates;

   **f.** The inventory of damaged personal property described in **6.** above;

   **g.** Receipts for additional living expenses incurred and records that support the fair rental value loss; and

   **h.** Evidence or affidavit that supports a claim under **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages, stating the amount and cause of loss.

## C. Loss Settlement

In this Condition **C.,** the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in **E.11.** Ordinance Or Law under Section **I** – Property Coverages. Covered property losses are settled as follows:

**1.** Property of the following types:

   **a.** Personal property;

   **b.** Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

   **c.** Structures that are not buildings; and

   **d.** Grave markers, including mausoleums;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

**2.** Buildings covered under Coverage **A** or **B** at replacement cost without deduction for depreciation, subject to the following:

   **a.** If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

     **(1)** The limit of liability under this policy that applies to the building;

     **(2)** The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

     **(3)** The necessary amount actually spent to repair or replace the damaged building.

 Copyright, Insurance Services Office, Inc., 1999

If the building is rebuilt at a new premises, the cost described in **(2)** above is limited to the cost which would have been incurred if the building had been built at the original premises.

**b.** If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

**(1)** The actual cash value of that part of the building damaged; or

**(2)** That proportion of the cost to repair or replace, after application of any deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

**c.** To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

**(1)** Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

**(2)** Those supports described in **(1)** above which are below the surface of the ground inside the foundation walls, if there is no basement; and

**(3)** Underground flues, pipes, wiring and drains.

**d.** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual *repair* or replacement is complete, we will settle the loss as noted in **2.a.** and **b.** above.

However, if the cost to repair or replace the damage is both:

**(1)** Less than 5% of the amount of insurance in this policy on the building; and

**(2)** Less than $2,500;

we will settle the loss as noted in **2.a.** and **b.** above whether or not actual repair or replacement is complete.

**e.** You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition **C.** Loss Settlement, provided you notify us of your intent to do so within 180 days after the date of loss.

**D. Loss To A Pair Or Set**

In case of loss to a pair or set we may elect to:

**1.** Repair or replace any part to restore the pair or set to its value before the loss; or

**2.** Pay the difference between actual cash value of the property before and after the loss.

**E. Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

**1.** Pay its own appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

**F. Other Insurance And Service Agreement**

If a loss covered by this policy is also covered by:

**1.** Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

**2.** A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

**G. Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss.

**H. Our Option**

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

**I. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

1. Reach an agreement with you;

2. There is an entry of a final judgment; or

3. There is a filing of an appraisal award with us.

**J. Abandonment Of Property**

We need not accept any property abandoned by an "insured".

**K. Mortgage Clause**

1. If a mortgagee is named in this policy, any loss payable under Coverage **A** or **B** will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

2. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

   **a.** Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

   **b.** Pays any premium due under this policy on demand if you have neglected to pay the premium; and

   **c.** Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs **E.** Appraisal, **G.** Suit Against Us and **I.** Loss Payment under Section **I** – Conditions also apply to the mortgagee.

3. If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

4. If we pay the mortgagee for any loss and deny payment to you:

   **a.** We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   **b.** At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

5. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**L. No Benefit To Bailee**

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**M. Nuclear Hazard Clause**

1. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

2. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

3. This policy does not apply under Section **I** to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**N. Recovered Property**

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**O. Volcanic Eruption Period**

One or more volcanic eruptions that occur within a 72 hour period will be considered as one volcanic eruption.

**P. Policy Period**

This policy applies only to loss which occurs during the policy period.

**Q. Concealment Or Fraud**

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

**2.** Engaged in fraudulent conduct; or

**3.** Made false statements;

relating to this insurance.

**R. Loss Payable Clause**

If the Declarations show a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

## SECTION II – LIABILITY COVERAGES

**A. Coverage E – Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

**1.** Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

**2.** Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

**B. Coverage F – Medical Payments To Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

**1.** To a person on the "insured location" with the permission of an "insured"; or

**2.** To a person off the "insured location", if the "bodily injury":

**a.** Arises out of a condition on the "insured location" or the ways immediately adjoining;

**b.** Is caused by the activities of an "insured";

**c.** Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

**d.** Is caused by an animal owned by or in the care of an "insured".

## SECTION II – EXCLUSIONS

**A. "Motor Vehicle Liability"**

**1.** Coverages **E** and **F** do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

**a.** Is registered for use on public roads or property;

**b.** Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

**c.** Is being:

**(1)** Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

**(2)** Rented to others;

**(3)** Used to carry persons or cargo for a charge; or

**(4)** Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

**2.** If Exclusion **A.1.** does not apply, there is still no coverage for "motor vehicle liability" unless the "motor vehicle" is:

**a.** In dead storage on an "insured location";

**b.** Used solely to service an "insured's" residence;

**c.** Designed to assist the handicapped and, at the time of an "occurrence", it is:

**(1)** Being used to assist a handicapped person; or

**(2)** Parked on an "insured location";

**d.** Designed for recreational use off public roads and:

**(1)** Not owned by an "insured"; or

**(2)** Owned by an "insured" provided the "occurrence" takes place on an "insured location" as defined in Definitions **B. 6.a., b., d., e.** or **h.;** or

**e.** A motorized golf cart that is owned by an "insured", designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

**(1)** A golfing facility and is parked or stored there, or being used by an "insured" to:

**(a)** Play the game of golf or for other recreational or leisure activity allowed by the facility;

    **(b)** Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

    **(c)** Cross public roads at designated points to access other parts of the golfing facility; or

  **(2)** A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

**B. "Watercraft Liability"**

  **1.** Coverages **E** and **F** do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:

    **a.** Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

    **b.** Rented to others;

    **c.** Used to carry persons or cargo for a charge; or

    **d.** Used for any "business" purpose.

  **2.** If Exclusion **B.1.** does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:

    **a.** Is stored;

    **b.** Is a sailing vessel, with or without auxiliary power, that is:

      **(1)** Less than 26 feet in overall length; or

      **(2)** 26 feet or more in overall length and not owned by or rented to an "insured"; or

    **c.** Is not a sailing vessel and is powered by:

      **(1)** An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

        **(a)** 50 horsepower or less and not owned by an "insured"; or

        **(b)** More than 50 horsepower and not owned by or rented to an "insured"; or

      **(2)** One or more outboard engines or motors with:

        **(a)** 25 total horsepower or less;

        **(b)** More than 25 horsepower if the outboard engine or motor is not owned by an "insured"; or

        **(c)** More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

        **(d)** More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

          **(i)** You declare them at policy inception; or

          **(ii)** Your intent to insure them is reported to us in writing within 45 days after you acquire them.

        The coverages in **(c)** and **(d)** above apply for the policy period.

        Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

**C. "Aircraft Liability"**

  This policy does not cover "aircraft liability".

**D. "Hovercraft Liability"**

  This policy does not cover "hovercraft liability".

**E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

  Coverages **E** and **F** do not apply to the following:

  **1. Expected Or Intended Injury**

    "Bodily injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":

    **a.** Is of a different kind, quality or degree than initially expected or intended; or

    **b.** Is sustained by a different person, entity, real or personal property, than initially expected or intended.

    However, this Exclusion **E.1.** does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property;

  **2. "Business"**

    **a.** "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

    This Exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

    **b.** This Exclusion **E.2.** does not apply to:

      **(1)** The rental or holding for rental of an "insured location";

    **(a)** On an occasional basis if used only as a residence;

    **(b)** In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

    **(c)** In part, as an office, school, studio or private garage; and

  **(2)** An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

**3. Professional Services**

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

**4. "Insured's" Premises Not An "Insured Location"**

"Bodily injury" or "property damage" arising out of a premises:

  **a.** Owned by an "insured";

  **b.** Rented to an "insured"; or

  **c.** Rented to others by an "insured";

that is not an "insured location";

**5. War**

"Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

  **a.** Undeclared war, civil war, insurrection, rebellion or revolution;

  **b.** Warlike act by a military force or military personnel; or

  **c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

**6. Communicable Disease**

"Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

**7. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

**8. Controlled Substance**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions **A.** "Motor Vehicle Liability", **B.** "Watercraft Liability", **C.** "Aircraft Liability", **D.** "Hovercraft Liability" and **E.4.** "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

**F. Coverage E – Personal Liability**

Coverage **E** does not apply to:

**1.** Liability:

  **a.** For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in **D.** Loss Assessment under Section **II** – Additional Coverages;

  **b.** Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

    **(1)** That directly relate to the ownership, maintenance or use of an "insured location"; or

    **(2)** Where the liability of others is assumed by you prior to an "occurrence";

  unless excluded in **a.** above or elsewhere in this policy;

**2.** "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

**3.** "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

**4.** "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

  **a.** Workers' compensation law;

    **b.** Non-occupational disability law; or

    **c.** Occupational disease law;

**5.** "Bodily injury" or "property damage" for which an "insured" under this policy:

    **a.** Is also an insured under a nuclear energy liability policy issued by the:

      **(1)** Nuclear Energy Liability Insurance Association;

      **(2)** Mutual Atomic Energy Liability Underwriters;

      **(3)** Nuclear Insurance Association of Canada;

      or any of their successors; or

    **b.** Would be an insured under such a policy but for the exhaustion of its limit of liability; or

**6.** "Bodily injury" to you or an "insured" as defined under Definitions **5.a.** or **b.**

    This exclusion also applies to any claim made or suit brought against you or an "insured":

    **a.** To repay; or

    **b.** Share damages with;

    another person who may be obligated to pay damages because of "bodily injury" to an "insured".

**G. Coverage F – Medical Payments To Others**

Coverage **F** does not apply to "bodily injury":

**1.** To a "residence employee" if the "bodily injury":

    **a.** Occurs off the "insured location"; and

    **b.** Does not arise out of or in the course of the "residence employee's" employment by an "insured";

**2.** To any person eligible to receive benefits voluntarily provided or required to be provided under any:

    **a.** Workers' compensation law;

    **b.** Non-occupational disability law; or

    **c.** Occupational disease law;

**3.** From any:

    **a.** Nuclear reaction;

    **b.** Nuclear radiation; or

    **c.** Radioactive contamination;

    all whether controlled or uncontrolled or however caused; or

    **d.** Any consequence of any of these; or

**4.** To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

**SECTION II – ADDITIONAL COVERAGES**

We cover the following in addition to the limits of liability:

**A. Claim Expenses**

We pay:

**1.** Expenses we incur and costs taxed against an "insured" in any suit we defend;

**2.** Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage **E** limit of liability. We need not apply for or furnish any bond;

**3.** Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

**4.** Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

**B. First Aid Expenses**

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

**C. Damage To Property Of Others**

**1.** We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

**2.** We will not pay for "property damage":

    **a.** To the extent of any amount recoverable under Section **I**;

    **b.** Caused intentionally by an "insured" who is 13 years of age or older;

    **c.** To property owned by an "insured";

    **d.** To property owned by or rented to a tenant of an "insured" or a resident in your household; or

    **e.** Arising out of:

      **(1)** A "business" engaged in by an "insured";

      **(2)** Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

      **(3)** The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".

This exclusion **e.(3)** does not apply to a "motor vehicle" that:

- **(a)** Is designed for recreational use off public roads;
- **(b)** Is not owned by an "insured"; and
- **(c)** At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

**D. Loss Assessment**

1. We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

   **a.** "Bodily injury" or "property damage" not excluded from coverage under Section **II −** Exclusions; or

   **b.** Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

   - **(1)** Is elected by the members of a corporation or association of property owners; and
   - **(2)** Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

2. Paragraph I. Policy Period under Section **II −** Conditions does not apply to this Loss Assessment Coverage.

3. Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

   **a.** One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

   **b.** A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

4. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**SECTION II − CONDITIONS**

**A. Limit Of Liability**

Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** limit of liability shown in the Declarations.

**B. Severability Of Insurance**

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

**C. Duties After "Occurrence"**

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

1. Give written notice to us or our agent as soon as is practical, which sets forth:

   **a.** The identity of the policy and the "named insured" shown in the Declarations;

   **b.** Reasonably available information on the time, place and circumstances of the "occurrence"; and

   **c.** Names and addresses of any claimants and witnesses;

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

4. At our request, help us:

   **a.** To make settlement;

   **b.** To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

    **c.** With the conduct of suits and attend hearings and trials; and

    **d.** To secure and give evidence and obtain the attendance of witnesses;

  **5.** With respect to **C.** Damage To Property Of Others under Section **II** – Additional Coverages, submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in an "insured's" control;

  **6.** No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

**D. Duties Of An Injured Person – Coverage F – Medical Payments To Others**

  **1.** The injured person or someone acting for the injured person will:

    **a.** Give us written proof of claim, under oath if required, as soon as is practical; and

    **b.** Authorize us to obtain copies of medical reports and records.

  **2.** The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**E. Payment Of Claim – Coverage F – Medical Payments To Others**

Payment under this coverage is not an admission of liability by an "insured" or us.

**F. Suit Against Us**

  **1.** No action can be brought against us unless there has been full compliance with all of the terms under this Section **II.**

  **2.** No one will have the right to join us as a party to any action against an "insured".

  **3.** Also, no action with respect to Coverage **E** can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

**G. Bankruptcy Of An "Insured"**

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

**H. Other Insurance**

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

**I. Policy Period**

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

**J. Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

  **1.** Intentionally concealed or misrepresented any material fact or circumstance;

  **2.** Engaged in fraudulent conduct; or

  **3.** Made false statements;

relating to this insurance.

## SECTIONS I AND II – CONDITIONS

**A. Liberalization Clause**

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

  **1.** A subsequent edition of this policy; or

  **2.** An amendatory endorsement.

**B. Waiver Or Change Of Policy Provisions**

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**C. Cancellation**

  **1.** You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

  **2.** We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

    **a.** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

    **b.** When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

**c.** When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

**(1)** If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

**(2)** If the risk has changed substantially since the policy was issued.

This can be done by letting you know at least 30 days before the date cancellation takes effect.

**d.** When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

**3.** When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

**4.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**D. Nonrenewal**

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

**E. Assignment**

Assignment of this policy will not be valid unless we give our written consent.

**F. Subrogation**

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage **F** or Paragraph **C.** Damage To Property Of Others under Section **II** – Additional Coverages.

**G. Death**

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

**1.** We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

**2.** "Insured" includes:

**a.** An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

**b.** With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

## SCHEDULE OF MORTGAGEES, ADDITIONAL INSUREDS AND LIENHOLDERS

| Policy Number: MLH-0016634 | Effective Date: 09-21-2022 | 12:01 A.M., Standard Time |
|---|---|---|
| Named Insured: Tarifeno, Judy | Agent Number: | |

Mortgagee ,# 7190474937, PHH Mortgage Services ISAOA/ATIMA ,P.O BOX - 5954, ,SPRINGFIELD, ,OH ,45501

HD1002-0708

# ESSEX INSURANCE COMPANY
# EVANSTON INSURANCE COMPANY

**MARKEL**

---

## ANIMAL LIABILITY LIMITATION

---

| Schedule | |
|---|---|
| Animal Hazard Limit of Liability: | $25,000 per "Occurrence", unless a limit is shown below |
| | $_____ per "Occurrence" |

Information required to complete this Schedule, if not shown above, will be shown on the Declarations Page.

---

In consideration of the premium charge shown on the Declarations Page, it is hereby agreed and understood that your policy is amended as follows:

The following is added to **SECTION II – CONDITIONS, A. Limit of Liability**:

The Animal Hazard Limit of Liability shown in the Schedule of this endorsement or on the Declarations Page is the most we will pay for any one "occurrence" when "bodily injury" or "property damage" is caused by an animal owned by you, or in your care, custody or control.

The Animal Hazard of Liability is not an additional limit of liability and does not increase the limit available to you.

The following is added to **SECTION II – EXCLUSIONS**:

**"Animal"**
Coverage **E** and **F** do not apply to "bodily injury" or "property damage" arising out of:
  A.  Attack, non-domesticated or guard dogs;
  B.  The following breeds of dogs: Rottweiler, Doberman Pinscher, Akita, Bullmastiff, wolf hybrids, Chow Chow and pit bull, including but not limited to, American Staffordshire Terrier, Staffordshire Bull Terrier or American Pit Bull Terrier;
  C.  Animals whose possession is prohibited by applicable local, state or federal regulations or laws; or
  D.  Animals whose possession requires applicable state or federal licensing.

All other terms, conditions and limitations of the policy remain unchanged.

HS1017-0411

# ESSEX INSURANCE COMPANY

# EVANSTON INSURANCE COMPANY

**MARKEL**

---

## TAINTED DRYWALL MATERIAL EXCLUSION

This endorsement modifies insurance provided under the following:

    DWELLING PROPERTY 1 – BASIC FORM
    DWELLING PROPERTY 3 – SPECIAL FORM
    HOMEOWNERS 3 – SPECIAL FORM
    HOMEOWNERS 8 – MODIFIED COVERAGE FORM

The following exclusion is added to Paragraph **A.** of the **GENERAL EXCLUSIONS** section of the DWELLING PROPERTY forms and to both **SECTION I – EXCLUSIONS** and **SECTION II – EXCLUSIONS** of the HOMEOWNERS forms:

**Tainted Drywall Material Exclusion**

We do not insure for loss caused directly or indirectly by "tainted drywall material". Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. This exclusion applies to:

I.   Any loss including, but not limited to, the presence, spread or any activity of "tainted drywall material". This exclusion applies regardless of whether there is:
    A.   Any physical loss or damage to insured property;
    B.   Any loss of use, occupancy or functionality; or
    C.   Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of "tainted drywall material", by any "insured" or any other person or entity.

II.  Any loss including, but not limited to:
    A.   "Bodily injury" arising out of the actual, alleged, threatened or suspected inhalation of, ingestion of, or exposure to "tainted drywall material".
    B.   "Property damage" arising out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of "tainted drywall material".
    C.   Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of "tainted drywall material", by any "insured" or any other person or entity.

III.  The following definition is added to the **Definitions** section:
"Tainted drywall material" means any:
    A.   Sheetrock, plasterboard, gypsum board, wall board, drywall or any substantially similar material that:
        1.   Produces gases, fumes, odors, or irritants; or
        2.   Corrodes, tarnishes, fades, oxidizes, or reacts with metals; or
        3.   Contains harmful ingredients or materials;
        whether in solid, dust, particle or gas form, or a mixture thereof.

    B.   Material used in the manufacture of sheetrock, plasterboard, gypsum board, wallboard, drywall, or any substantially similar material that:
        1.   Produces gases, fumes, odors, or irritants; or
        2.   Corrodes, tarnishes, fades, oxidizes, or reacts with metals; or
        3.   Contains harmful ingredients or materials;
        whether in solid, dust, particle or gas form, or a mixture thereof.

All other provisions of the policy remain unchanged.

HD1010-0310

**Meadowbrook, Inc.**
**6000 Cattleridge Drive, Suite 300**
**Sarasota, FL, 34232**

**MLH-0016634**
**Tarifeno, Judy**

## Policyholder Notice

### Reporting a Claim

To report a claim under your homeowner policy, please contact your insurance company directly  for Essex Insurance Company or Evanston Insurance Company


- Email: newclaims@markelcorp.com

- Fax number: 1-855-662-7535

- By phone, 24 hours a day, 7 days a week  1-800-362-7535  select #9 for Claims department

Please be ready to provide us with the following information: the name on the policy, the policy number, your agent's name, the date the loss occurred, the type of loss, and any other facts that may be relevant to our review of your claim.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SPECIAL PROVISIONS – FLORIDA

**SECTION I – PROPERTY COVERAGES**
**E. Additional Coverages, 2.  Reasonable Repairs** is replaced by the following:
**2.  Reasonable Emergency Measures**
- **a.**  We will pay up to the greater of $3,000 or 1% of your Coverage A limits of liability for the reasonable costs incurred by you for necessary measures taken solely to protect covered property from further damage, when the damage or loss is caused by a Peril Insured Against.
- **b.**  We will not pay more than the amount in **a.** above, unless we provide you approval within 48 hours of your written request, as received by us, to exceed the limit in **a.** above.  In such circumstance, we will pay only up to the additional amount for the measures we authorize.
  If we fail to respond to you within 48 hours of your written request to us and the damage or loss is caused by a Peril Insured Against, you may exceed the amount in **a.** above only up to the cost incurred by you for the reasonable emergency measures necessary to protect the covered property from further damage.
- **c.**  A reasonable measure taken under this **Additional Coverage E.2.** may include a permanent repair when necessary to protect the covered property from further damage or to prevent unwanted entry to the property. To the degree reasonably possible, the damaged property must be retained for us to inspect.
- **d.**  This coverage does not:
  - **(1)**  Increase the limit of liability that applies to the covered property; or
  - **(2)**  Relieve you of your duties, in case of a loss to covered property, as set forth in **Condition B.**
  - **(3)**  Pay for property not covered, or for repairs resulting from a peril not covered, or for loss excluded in this Policy.

(This is **Additional Coverages D.** in Form **HO 00 06** and E. in Form **HO 00 08.**)

**SECTION I – CONDITIONS**
**B.  Duties After Loss is replaced by the following:**
In case of a loss to covered property, we have no duty to provide coverage under this Policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you an "insured" seeking coverage, or a representative of either:
1.  Give prompt notice to us or your insurance agent.
   This provision concerning time for submission of a claim, supplemental claim or reopened claim does not affect any limitation for legal action against us as provided in this policy under the Suit Against Us Condition, including any amendment to that condition.
   Except for Reasonable Emergency Measures taken under **Additional Coverage E.2.**, there is no coverage for repairs that begin before the earlier of:
   - **a.**  72 hours after we are notified of the loss;
   - **b.**  The time of loss inspection by us; or
   - **c.**  The time of other approval by us;
2.  **a.**  To the degree reasonably possible, retain the damaged property; and
   - **b.**  Allow us to inspect, subject to **2.a.** above, all damaged property prior to its removal from the "residence premises";
3.  Notify the police in case of loss by theft;
4.  Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **Additional Coverage E.6.** Credit Card, Electronic Fund Transfer Card or Access Device Forgery and Counterfeit Money under **Section I – Property Coverages**;
5.  Protect the covered property from further damage. The following must be performed:
   - **a.**  Take reasonable emergency measures that are necessary to protect the covered property from further damage, as provided under Additional Coverage E.2.

A reasonable emergency measure under **5.a.** above may include a permanent repair when necessary to protect the covered property from further damage or to prevent unwanted entry to the property. To the degree reasonably possible, the damaged property must be retained for us to inspect;

    **b.**  Keep an accurate record of repair expenses;

**6.**  Cooperate with us in the investigation of a claim;

**7.**  Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

**8.**  As often as we reasonably require:

    **a.**  Show the damaged property;

    **b.**  Provide us with records and documents we request and permit us to make copies; and

    **c.**  Submit to examination under oath, while not in the presence of another named insured, and sign the same;

**9.**  Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth to the best of your knowledge and belief:

    **a.**  The time and cause of loss;

    **b.**  The interest of all "insureds" and all others in the property involved and all liens on the property;

    **c.**  Other insurance which may cover the loss;

    **d.**  Changes in title or occupancy of the property during the term of the policy;

    **e.**  Specifications of damaged buildings and detailed repair estimates;

    **f.**  The inventory of damaged personal property described in **7.** above;

    **g.**  Receipts for additional living expenses incurred and records that support the fair rental value loss;

    **h.**  Evidence or affidavit that supports a claim under **C.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money** under **Section I – Property Coverages**, stating the amount and cause of loss.

The duties above apply regardless of whether you, an "insured" seeking coverage, or a representative of either retains or is assisted by a party who provides legal advice, insurance advice or expert claim advice, regarding an insurance claim under this Policy.

## SECTIONS I AND II - CONDITIONS

**C. Cancellation** is replaced by the following:

**1.**  You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

**2.**  We may cancel this policy for any reason by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

    **a.**  When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

    **b.**  When this policy has been in effect for less than 90 days and is not a renewal with us, we may cancel:

        **i.** for any reason by letting you know at least 20 days before the date cancellation takes effect; or

        **ii.** by letting you know at least 10 days before the cancellation takes effect if there has been a material misstatement or misrepresentation or failure to comply with our underwriting requirements.

    **c.**  When this Policy has been in effect for 90 days or more, or at any time if it is a renewal with us, we may cancel for any reason by letting you know at least 45 days before the date cancellation takes effect.

**3.**  If the return premium is not refunded with the notice of cancellation or when this Policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

All other terms, conditions and limitation of the policy remain unchanged.

# WATER DAMAGE EXCLUSION AND LIMITED ADDITIONAL COVERAGE

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ THIS ENDORSEMENT CAREFULLY.**

## SCHEDULE

| |
|---|
| **Water Damage Additional Coverage Sublimit: $10,000** |
| Information required to complete this Schedule, if not shown above, will be shown in the **HO-3 Homeowner Decaration**. |

This endorsement modifies insurance provided under the following form:
**HOMEOWNERS 3 – SPECIAL FORM (HO 00 03)**

The following **Water Damage Exclusion** is added to **SECTION I – EXCLUSIONS**:

**Water Damage Exclusion**

We do not insure for loss caused directly or indirectly by Water Damage. However, this exclusion does not apply to loss or damage to Covered Property caused by the intentional spraying of a fire hose to extinguish a fire.

**A.** Water Damage as used herein means loss or damage to property covered under **SECTION 1 – PROPERTY COVERAGES** caused directly or indirectly by water, freeze, wetness, accidental discharge, seepage, or excessive moisture resulting from a Peril Insured Against under this policy.

**B.** Coverage provided under the following shall not apply to this policy:

**(1)** **SECTION I – PERILS INSURED AGAINST**, Paragraph B., **Coverage C – Personal Property**, subparagraph **12.**, **Accidental Discharge Or Overflow Of Water Or Steam**.

**(2)** **SECTION I – PERILS INSURED AGAINST**, Paragraph B., **Coverage C – Personal Property**, subparagraph **14.**, **Freezing**.

The following **Water Damage Additional Coverage** is added to **SECTION I – PROPERTY COVERAGES**, Paragraph **E.**, **Additional Coverages**:

**Water Damage Additional Coverage**

**A.** Under this Additional Coverage, Water Damage has the meaning described in the **Water Damage Exclusion**.

**B.** Subject to all other provisions of this policy, we will pay under this **Water Damage Additional Coverage** for loss caused directly by Water Damage to property covered under **SECTION 1 – PROPERTY COVERAGES**.

**C.** The most we will pay under this **Water Damage Additional Coverage** is the amount shown as the Water Damage Additional Coverage Sublimit in the Schedule above or the **HO-3 Homeowner Declaration**.

All other terms and conditions of this policy remain.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PERSONAL PROPERTY REPLACEMENT COST LOSS SETTLEMENT – FLORIDA

## A. Eligible Property

1. Covered losses to the following property are settled at replacement cost at the time of the loss:

   a. Coverage **C;** and

   b. If covered in this policy:

      (1) Awnings, outdoor antennas and outdoor equipment; and

      (2) Carpeting and household appliances;

      whether or not attached to buildings.

2. This method of loss settlement will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy and not subject to agreed value loss settlement:

   a. Jewelry;

   b. Furs and garments:

      (1) Trimmed with fur; or

      (2) Consisting principally of fur;

   c. Cameras, projection machines, films and related articles of equipment;

   d. Musical equipment and related articles of equipment;

   e. Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding:

      (1) Pens or pencils;

      (2) Flasks;

      (3) Smoking implements; or

      (4) Jewelry; and

   f. Golfer's equipment, meaning golf clubs, golf clothing and golf equipment.

   Personal Property Replacement Cost loss settlement will not apply to other classes of property separately described and specifically insured.

## B. Ineligible Property

Property listed below is not eligible for replacement cost loss settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

1. Antiques, fine arts, paintings and similar articles of rarity or antiquity, which cannot be replaced.

2. Memorabilia, souvenirs, collectors items and similar articles, whose age or history contributes to their value.

3. Articles not maintained in good or workable condition.

4. Articles that are outdated or obsolete and are stored or not being used.

## C. Replacement Cost Loss Settlement Condition

The following loss settlement condition applies to all property described in **A.** above:

1. We will pay no more than the least of the following amounts:

   a. Replacement cost at the time of loss without deduction for depreciation;

   b. The full cost of repair at the time of loss;

   c. The limit of liability that applies to Coverage **C,** if applicable;

   d. Any applicable special limits of liability stated in this policy; or

   e. For loss to any item described in **A.2.a. – f.** above, the limit of liability that applies to the item.

2. We will settle the loss as follows:

   a. If the Mobilehome Endorsement is not made a part of this policy, we will settle the loss as noted in Paragraph **C.1.** above whether or not actual repair or replacement is complete.

 © Insurance Services Office, Inc., 2012

**b.** If the Mobilehome Endorsement is made a part of this policy:

**(1)** If the cost to repair or replace the property described in **A.** above is more than $500, we will pay no more than the actual cash value of the loss until the actual repair or replacement is complete.

**(2)** You may make a claim for loss on an actual cash value basis and then make claim for any additional liability in accordance with this endorsement provided you notify us, within 180 days after the date of loss, of your intent to repair or replace the damaged property.

All other provisions of this policy apply.

© Insurance Services Office, Inc., 2012

HO 23 86 05 13



# EVANSTON INSURANCE COMPANY

## POLICY SIGNATURE PAGE

COVERAGE IS PROVIDED BY THE COMPANY NAMED IN THE DECLARATIONS PAGE. (REFERRED TO IN THE POLICY AS THE COMPANY.)

In witness whereof, we have caused this policy to be signed by its president and secretary. In the event that the president or secretary who signed the contract ceases to be an officer, either before or after the policy is issued, the policy may be issued with the same effect as if they were still officers.

Evanston Insurance Company

Kathleen Ann Sturgeon
Secretary

Bryan W. Sanders
President

Home Office:
Deerfield, Illinois

Administrative Office:
P.O. Box 906
Pewaukee, WI 53072-0906
800-236-2862

# EXHIBIT B



**MARKEL**

December 8, 2022

Vanessa@StallarAdjusting.com

RE: Your Claim #:  22C8151
    Your Policy #:   MLH-0016634
    Date of Loss:    9/28/2022

Dear Vanessa:

I'm writing on behalf of Markel Service, Incorporated, as claims service manager for Evanston Insurance Company, and appreciate the opportunity to work with you on the above referenced matter.

We have recently made payment to you in response to your covered claim.

Below is a summary of the payments issued to date:

Coverage A – Dwelling:  $20,282.30

A copy of the adjuster's estimate has been attached for your records.   Should you have any questions or comments upon receipt and review of this letter, please feel free to call me at (800) 362-7535 ext. 106965.

Sincerely,

*Kimberly Dickson*

cc:

Judy Tarifeno
244 SW 31st Terr
Cape Coral, FL 33914

**Markel - Claims**
**Arizona · Bermuda · California · Illinois · Nebraska · New Jersey · New York · Virginia · Wisconsin**
P.O. Box 2009, Glen Allen, VA 23058-2009  (800) 362-7535  Fax (855) 662-7535  markelclaims@markelcorp.com
California License: Markel West Insurance Services #OD95581
www.markelcorp.com

Please review our privacy policy at www.markel.com/privacy-policy.



**Johns Eastern Company, Inc.**

500 Winderley Place – Suite 106
Maitland, FL 32751-7408
Tel: 877-326-5326
Fax: 407-875-8081
General Email: florida@johnseastern.com

**JUDY_TARIFENO**

**SKETCH1**

**Main Level**



### Dwelling Roof

| | | | |
|---|---|---|---|
| 5074.41 | Surface Area | 50.74 | Number of Squares |
| 340.00 | Total Perimeter Length | 67.50 | Total Ridge Length |
| 242.61 | Total Hip Length | | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| The following items account for the replacement of the roof of this structure. | | | | | | | |
| Depreciation based on age and use. | | | | | | | |
| The waste factor applied includes any/all necessary normal installation waste. | | | | | | | |
| 1. Tear off, haul and dispose of comp. shingles - Laminated | 50.74 SQ | 81.97 | 0.00 | 0.00 | 4,159.16 | (0.00) | 4,159.16 |
| 2. Re-nailing of roof sheathing - complete re-nail | 5,074.41 SF | 0.37 | 3.30 | 0.00 | 1,880.83 | (6.09) | 1,874.74 |
| 3. Roofing felt - 30 lb. | 50.74 SQ | 57.57 | 56.63 | 0.00 | 2,977.73 | (609.84) | 2,367.89 |
| 4. Water barrier joint taping - Mod. bitumen - 4" seam tape | 5,074.41 SF | 0.41 | 23.09 | 0.00 | 2,103.60 | (213.13) | 1,890.47 |
| 5. Asphalt starter - universal starter course | 340.00 LF | 2.75 | 11.71 | 187.00 | 1,133.71 | (126.14) | 1,007.57 |
| 6. Laminated - comp. shingle rfg. - w/out felt | 58.67 SQ | 321.50 | 492.48 | 0.00 | 19,354.89 | (4,545.99) | 14,808.90 |
| 7. Ridge cap - composition shingles* | 280.11 LF | 6.29 | 25.85 | 0.00 | 1,787.74 | (278.43) | 1,509.31 |
| Used in the application of a laminate shingle | | | | | | | |
| 8. Continuous ridge vent - aluminum | 30.00 LF | 12.45 | 7.76 | 74.70 | 455.96 | (61.41) | 394.55 |
| 9. Flashing - pipe jack - lead | 6.00 EA | 97.39 | 18.17 | 0.00 | 602.51 | (143.73) | 458.78 |
| 10. Flat roof exhaust vent / cap - gooseneck 12" | 1.00 EA | 119.30 | 2.47 | 23.86 | 145.63 | (19.54) | 126.09 |
| 11. Valley metal | 87.87 LF | 7.68 | 11.59 | 0.00 | 686.43 | (91.74) | 594.69 |
| 12. Apply roofing sealant/cement - per LF | 340.00 LF | 0.94 | 5.97 | 0.00 | 325.57 | (64.26) | 261.31 |
| 13. R&R Drip edge | 340.00 LF | 4.26 | 26.96 | 0.00 | 1,475.36 | (213.33) | 1,262.03 |
| 14. Gutter / downspout - Detach & reset | 340.00 LF | 3.70 | 0.00 | 0.00 | 1,258.00 | (0.00) | 1,258.00 |
| Gutter installed through the drip | | | | | | | |
| 15. Digital satellite system - Detach & reset | 1.00 EA | 45.85 | 0.00 | 0.00 | 45.85 | (0.00) | 45.85 |
| **Totals: Dwelling Roof** | | | **685.98** | **285.56** | **38,392.97** | **6,373.63** | **32,019.34** |



**Johns Eastern Company, Inc.**

500 Winderley Place – Suite 106
Maitland, FL 32751-7408
Tel: 877-326-5326
Fax: 407-875-8081
General Email: florida@johnseastern.com

### Front Elevation

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| No Damage | | | | | | | |
| **Totals: Front Elevation** | | | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** |



### Rear Elevation                                                   Formula Elevation 0" x 0" x 0"

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 16. R&R Patio/pool Enclosure - Full Screen | 1,857.00 SF | 6.20 | 280.04 | 2,302.68 | 14,096.12 | (1,077.06) | 13,019.06 |
| 17. R&R Screen door - metal - 30" - 36" - full screen (no glass) | 1.00 EA | 190.25 | 6.57 | 38.04 | 234.86 | (25.25) | 209.61 |
| **Totals: Rear Elevation** | | | **286.61** | **2,340.72** | **14,330.98** | **1,102.31** | **13,228.67** |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Total: Main Level** | | | 972.59 | 2,626.28 | 52,723.95 | 7,475.94 | 45,248.01 |
| **Total: SKETCH1** | | | 972.59 | 2,626.28 | 52,723.95 | 7,475.94 | 45,248.01 |

### SKETCH2

### Main Level



### Bedroom                                                                        Height: 9' 10"

| | |
|---|---|
| 535.92 SF Walls | 184.56 SF Ceiling |
| 720.47 SF Walls & Ceiling | 184.56 SF Floor |
| 20.51 SY Flooring | 54.50 LF Floor Perimeter |
| 54.50 LF Ceil. Perimeter | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 18. Contents - move out then reset | 1.00 EA | 72.55 | 0.00 | 14.52 | 87.07 | (0.00) | 87.07 |
| 19. Heat/AC register - Mechanically attached - Detach & reset | 1.00 EA | 18.69 | 0.00 | 3.74 | 22.43 | (0.00) | 22.43 |



**Johns Eastern Company, Inc.**

500 Winderley Place – Suite 106
Maitland, FL 32751-7408
Tel: 877-326-5326
Fax: 407-875-8081
General Email: florida@johnseastern.com

**CONTINUED - Bedroom**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 20. Cold air return cover - Detach & reset | 1.00 EA | 25.53 | 0.00 | 5.10 | 30.63 | (0.00) | 30.63 |
| 21. R&R Batt insulation - 10" - R30 - paper / foil faced | 92.28 SF | 2.23 | 7.56 | 41.16 | 254.50 | (13.95) | 240.55 |
| 22. R&R 5/8" drywall - hung, taped, ready for texture | 92.28 SF | 3.54 | 4.20 | 65.32 | 396.19 | (7.75) | 388.44 |
| 23. Apply anti-microbial agent to part of the ceiling | 92.28 SF | 0.32 | 0.30 | 5.90 | 35.73 | (0.00) | 35.73 |
| 24. Texture drywall - machine - knockdown Blend with existing | 184.56 SF | 1.11 | 0.60 | 40.98 | 246.44 | (1.11) | 245.33 |
| 25. Seal the ceiling w/PVA primer - one coat | 184.56 SF | 0.69 | 0.72 | 25.48 | 153.55 | (5.91) | 147.64 |
| 26. Paint the ceiling - one coat | 184.56 SF | 0.80 | 2.04 | 29.54 | 179.23 | (16.73) | 162.50 |
| 27. Mask and cover large light fixture | 1.00 EA | 23.18 | 0.05 | 4.64 | 27.87 | (0.53) | 27.34 |
| 28. Mask wall - plastic, paper, tape (per LF) | 54.50 LF | 1.78 | 0.96 | 19.40 | 117.37 | (1.77) | 115.60 |
| 29. Mask per square foot for drywall work | 184.56 SF | 0.31 | 0.72 | 11.44 | 69.37 | (1.33) | 68.04 |
| 30. Final cleaning - construction - Commercial | 184.56 SF | 0.25 | 0.00 | 9.22 | 55.36 | (0.00) | 55.36 |
| **Totals: Bedroom** | | | **17.15** | **276.44** | **1,675.74** | **49.08** | **1,626.66** |



**Garage**                                                                 **Height: 10'**

| | | | |
|---|---|---|---|
| 1060.00 SF Walls | | 660.50 SF Ceiling | |
| 1720.50 SF Walls & Ceiling | | 660.50 SF Floor | |
| 73.39 SY Flooring | | 106.00 LF Floor Perimeter | |
| 106.00 LF Ceil. Perimeter | | | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 31. Contents - move out then reset - Extra large room | 1.00 EA | 217.63 | 0.00 | 43.52 | 261.15 | (0.00) | 261.15 |
| 32. R&R Batt insulation - 10" - R30 - paper / foil faced | 64.00 SF | 2.23 | 5.24 | 28.54 | 176.50 | (9.68) | 166.82 |
| 33. R&R 5/8" drywall - hung, taped, ready for texture | 64.00 SF | 3.54 | 2.91 | 45.30 | 274.77 | (5.38) | 269.39 |
| 34. Apply anti-microbial agent to the surface area | 64.00 SF | 0.32 | 0.21 | 4.10 | 24.79 | (0.00) | 24.79 |



**Johns Eastern Company, Inc.**

500 Winderley Place – Suite 106
Maitland, FL 32751-7408
Tel: 877-326-5326
Fax: 407-875-8081
General Email: florida@johnseastern.com

### CONTINUED - Garage

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 35.  Texture drywall - machine - knockdown | 96.00 SF | 1.11 | 0.31 | 21.32 | 128.19 | (0.58) | 127.61 |
| Blend with existing | | | | | | | |
| 36.  Seal the surface area w/PVA primer - one coat | 96.00 SF | 0.69 | 0.37 | 13.24 | 79.85 | (3.07) | 76.78 |
| 37.  Paint the ceiling - one coat | 660.50 SF | 0.80 | 7.30 | 105.68 | 641.38 | (59.89) | 581.49 |
| 38.  Mask and cover large light fixture | 3.00 EA | 23.18 | 0.15 | 13.90 | 83.59 | (1.60) | 81.99 |
| 39.  Mask wall - plastic, paper, tape (per LF) | 106.00 LF | 1.78 | 1.86 | 37.74 | 228.28 | (3.43) | 224.85 |
| 40.  Mask per square foot for drywall work | 660.50 SF | 0.31 | 2.58 | 40.96 | 248.30 | (4.76) | 243.54 |
| 41.  Final cleaning - construction - Commercial | 660.50 SF | 0.25 | 0.00 | 33.02 | 198.15 | (0.00) | 198.15 |
| **Totals:  Garage** | | | **20.93** | **387.32** | **2,344.95** | **88.39** | **2,256.56** |

### Generals

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 42.  Dumpster load - Approx. 20 yards, 4 tons of debris | 1.00 EA | 776.00 | 0.00 | 155.20 | 931.20 | (0.00) | 931.20 |
| Non Roofing Debris | | | | | | | |
| **Totals:  Generals** | | | **0.00** | **155.20** | **931.20** | **0.00** | **931.20** |
| **Total:  Main Level** | | | **38.08** | **818.96** | **4,951.89** | **137.47** | **4,814.42** |
| **Total:  SKETCH2** | | | **38.08** | **818.96** | **4,951.89** | **137.47** | **4,814.42** |
| **Line Item Totals:  JUDY_TARIFENO** | | | **1,010.67** | **3,445.24** | **57,675.84** | **7,613.41** | **50,062.43** |



**Johns Eastern Company, Inc.**

500 Winderley Place – Suite 106
Maitland, FL 32751-7408
Tel: 877-326-5326
Fax: 407-875-8081
General Email: florida@johnseastern.com

## Grand Total Areas:

| | | |
|---|---|---|
| 1,595.92 SF Walls | 845.06 SF Ceiling | 2,440.97 SF Walls and Ceiling |
| 845.06 SF Floor | 93.90 SY Flooring | 160.50 LF Floor Perimeter |
| 0.00 SF Long Wall | 0.00 SF Short Wall | 160.50 LF Ceil. Perimeter |
| | | |
| 845.06 Floor Area | 899.44 Total Area | 1,595.92 Interior Wall Area |
| 1,933.40 Exterior Wall Area | 165.83 Exterior Perimeter of Walls | |
| | | |
| 5,074.41 Surface Area | 50.74 Number of Squares | 340.00 Total Perimeter Length |
| 67.50 Total Ridge Length | 242.61 Total Hip Length | |

| Coverage | Item Total | % | ACV Total | % |
|---|---|---|---|---|
| Dwelling | 53,691.41 | 93.09% | 46,297.22 | 92.48% |
| Other Structures | 0.00 | 0.00% | 0.00 | 0.00% |
| Contents | 0.00 | 0.00% | 0.00 | 0.00% |
| ORDINANCE & LAW | 3,984.43 | 6.91% | 3,765.21 | 7.52% |
| Total | 57,675.84 | 100.00% | 50,062.43 | 100.00% |



**Johns Eastern Company, Inc.**

500 Winderley Place – Suite 106
Maitland, FL 32751-7408
Tel: 877-326-5326
Fax: 407-875-8081
General Email: florida@johnseastern.com

## Summary for Dwelling

| | |
|---|---:|
| Line Item Total | 49,261.89 |
| Overhead | 1,722.62 |
| Profit | 1,722.62 |
| Material Sales Tax | 984.28 |
| **Replacement Cost Value** | **$53,691.41** |
| Less Depreciation | (7,394.19) |
| **Actual Cash Value** | **$46,297.22** |
| Less Deductible | (29,999.35) |
| **Net Claim** | **$16,297.87** |
| Total Recoverable Depreciation | 7,394.19 |
| **Net Claim if Depreciation is Recovered** | **$23,692.06** |

### Sublimit Recap

| Description | Single Item Limit | Aggregate Limit | ACV | RCV | Overage |
|---|---|---|---|---|---|
| WATER DAMAGE EXCLUSION AND LIMITED ADDITIONAL COVERAGE | $10,000.00 | $10,000.00 | $3,883.22 | $4,020.69 | $0.00 |
| | | | $3,883.22 | $4,020.69 | $0.00 |

Joe Madden FLP239272



**Johns Eastern Company, Inc.**

500 Winderley Place – Suite 106
Maitland, FL 32751-7408
Tel: 877-326-5326
Fax: 407-875-8081
General Email: florida@johnseastern.com

## Summary for ORDINANCE & LAW

| | |
|---|---:|
| Line Item Total | 3,958.04 |
| Material Sales Tax | 26.39 |
| **Replacement Cost Value** | **$3,984.43** |
| Less Depreciation | (219.22) |
| **Actual Cash Value** | **$3,765.21** |
| **Net Claim** | **$3,765.21** |
| Total Recoverable Depreciation | 219.22 |
| **Net Claim if Depreciation is Recovered** | **$3,984.43** |

Joe Madden FLP239272

 **Johns Eastern Company, Inc.**

500 Winderley Place – Suite 106
Maitland, FL 32751-7408
Tel: 877-326-5326
Fax: 407-875-8081
General Email: florida@johnseastern.com

### Recap of Taxes, Overhead and Profit

| | Overhead (10%) | Profit (10%) | Material Sales Tax (6.5%) | Laundering Tax (2%) | Manuf. Home Tax (6%) | Storage Rental Tax (6.5%) |
|---|---|---|---|---|---|---|
| **Line Items** | | | | | | |
| | 1,722.62 | 1,722.62 | 1,010.67 | 0.00 | 0.00 | 0.00 |
| **Total** | **1,722.62** | **1,722.62** | **1,010.67** | **0.00** | **0.00** | **0.00** |



**Johns Eastern Company, Inc.**

500 Winderley Place – Suite 106
Maitland, FL 32751-7408
Tel: 877-326-5326
Fax: 407-875-8081
General Email: florida@johnseastern.com

## Recap by Room

**Estimate: JUDY_TARIFENO**

**Area: SKETCH1**

**Area: Main Level**

| | | | |
|---|---|---:|---:|
| **Dwelling Roof** | | **37,421.43** | **70.31%** |
| Coverage: Dwelling | 89.42% = | 33,463.39 | |
| Coverage: ORDINANCE & LAW | 10.58% = | 3,958.04 | |
| **Rear Elevation** | | **11,703.65** | **21.99%** |
| Coverage: Dwelling | 100.00% = | 11,703.65 | |
| **Area Subtotal:  Main Level** | | **49,125.08** | **92.31%** |
| Coverage: Dwelling | 91.94% = | 45,167.04 | |
| Coverage: ORDINANCE & LAW | 8.06% = | 3,958.04 | |
| **Area Subtotal:  SKETCH1** | | **49,125.08** | **92.31%** |
| Coverage: Dwelling | 91.94% = | 45,167.04 | |
| Coverage: ORDINANCE & LAW | 8.06% = | 3,958.04 | |

**Area: SKETCH2**

**Area: Main Level**

| | | | |
|---|---|---:|---:|
| **Bedroom** | | **1,382.15** | **2.60%** |
| Coverage: Dwelling | 100.00% = | 1,382.15 | |
| **Garage** | | **1,936.70** | **3.64%** |
| Coverage: Dwelling | 100.00% = | 1,936.70 | |
| **Generals** | | **776.00** | **1.46%** |
| Coverage: Dwelling | 100.00% = | 776.00 | |
| **Area Subtotal:  Main Level** | | **4,094.85** | **7.69%** |
| Coverage: Dwelling | 100.00% = | 4,094.85 | |
| **Area Subtotal:  SKETCH2** | | **4,094.85** | **7.69%** |
| Coverage: Dwelling | 100.00% = | 4,094.85 | |
| **Subtotal of Areas** | | **53,219.93** | **100.00%** |
| Coverage: Dwelling | 92.56% = | 49,261.89 | |
| Coverage: ORDINANCE & LAW | 7.44% = | 3,958.04 | |
| **Total** | | **53,219.93** | **100.00%** |



**Johns Eastern Company, Inc.**

500 Winderley Place – Suite 106
Maitland, FL 32751-7408
Tel: 877-326-5326
Fax: 407-875-8081
General Email: florida@johnseastern.com

### Recap by Category with Depreciation

| O&P Items | | | RCV | Deprec. | ACV |
|---|---|---|---|---|---|
| **AWNINGS & PATIO COVERS** | | | **9,229.29** | **1,077.06** | **8,152.23** |
| Coverage: Dwelling | @ | 100.00% = | 9,229.29 | | |
| **CLEANING** | | | **211.27** | | **211.27** |
| Coverage: Dwelling | @ | 100.00% = | 211.27 | | |
| **CONTENT MANIPULATION** | | | **290.18** | | **290.18** |
| Coverage: Dwelling | @ | 100.00% = | 290.18 | | |
| **GENERAL DEMOLITION** | | | **3,271.45** | | **3,271.45** |
| Coverage: Dwelling | @ | 100.00% = | 3,271.45 | | |
| **DOORS** | | | **163.32** | **25.25** | **138.07** |
| Coverage: Dwelling | @ | 100.00% = | 163.32 | | |
| **DRYWALL** | | | **1,313.85** | **26.11** | **1,287.74** |
| Coverage: Dwelling | @ | 100.00% = | 1,313.85 | | |
| **HEAT, VENT & AIR CONDITIONING** | | | **44.22** | | **44.22** |
| Coverage: Dwelling | @ | 100.00% = | 44.22 | | |
| **INSULATION** | | | **262.55** | **23.63** | **238.92** |
| Coverage: Dwelling | @ | 100.00% = | 262.55 | | |
| **PAINTING** | | | **962.36** | **87.73** | **874.63** |
| Coverage: Dwelling | @ | 100.00% = | 962.36 | | |
| **ROOFING** | | | **1,427.80** | **207.09** | **1,220.71** |
| Coverage: Dwelling | @ | 100.00% = | 1,427.80 | | |
| **WATER EXTRACTION & REMEDIATION** | | | **50.01** | | **50.01** |
| Coverage: Dwelling | @ | 100.00% = | 50.01 | | |
| **O&P Items Subtotal** | | | **17,226.30** | **1,446.87** | **15,779.43** |

| Non-O&P Items | | | RCV | Deprec. | ACV |
|---|---|---|---|---|---|
| **GENERAL DEMOLITION** | | | **4,329.16** | | **4,329.16** |
| Coverage: Dwelling | @ | 100.00% = | 4,329.16 | | |
| **ELECTRICAL - SPECIAL SYSTEMS** | | | **45.85** | | **45.85** |
| Coverage: Dwelling | @ | 100.00% = | 45.85 | | |
| **ROOFING** | | | **30,360.62** | **6,166.54** | **24,194.08** |
| Coverage: Dwelling | @ | 86.96% = | 26,402.58 | | |
| Coverage: ORDINANCE & LAW | @ | 13.04% = | 3,958.04 | | |
| **SOFFIT, FASCIA, & GUTTER** | | | **1,258.00** | | **1,258.00** |
| Coverage: Dwelling | @ | 100.00% = | 1,258.00 | | |
| **Non-O&P Items Subtotal** | | | **35,993.63** | **6166.54** | **29,827.09** |
| **O&P Items Subtotal** | | | **17,226.30** | **1,446.87** | **15,779.43** |
| **Overhead** | | | **1,722.62** | | **1,722.62** |
| Coverage: Dwelling | @ | 100.00% = | 1,722.62 | | |
| **Profit** | | | **1,722.62** | | **1,722.62** |



**Johns Eastern Company, Inc.**

500 Winderley Place – Suite 106
Maitland, FL 32751-7408
Tel: 877-326-5326
Fax: 407-875-8081
General Email: florida@johnseastern.com

| | | | | | |
|---|---|---|---|---|---|
| Coverage: Dwelling | @ | 100.00% = | 1,722.62 | | |
| **Material Sales Tax** | | | **1,010.67** | | **1,010.67** |
| Coverage: Dwelling | @ | 97.39% = | 984.28 | | |
| Coverage: ORDINANCE & LAW | @ | 2.61% = | 26.39 | | |
| **Total** | | | **57,675.84** | **7,613.41** | **50,062.43** |



JUDY_TARIFENO



13' 3"

12' 7"

14' 8"

15' 4"

Bedroom



15' 6"

14' 10"

3'

25' 8"

25'

Garage

28"

28' 8"

JUDY_TARIFENO

# Statement of Loss

**Claim #  22C8151**

**Johns Eastern Company, Inc.**

**500 Winderley Place – Suite 106**
**Maitland, FL 32751-7408**
**Tel: 877-326-5326**
**Fax: 407-875-8081**
**General Email: florida@johnseastern.com**

|  |  |  |  |
|---|---|---|---|
|  |  |  | 12/1/2022 |
| **Adjuster** | Joe Madden FLP239272 |  |  |
| **Phone** | (419) 509-8728 |  |  |
| **Insured Name** | Judy Tarifeno |  |  |
| **Loss Address** | 244 SW 31st Terrace, Cape Coral, FL 33914 |  |  |
| **Phone Number** |  |  |  |
| **Other Phone** | Ins Claim #  22C8151 | **Date of Loss** | 9/28/2022 |
| **Ins Company** |  |  |  |

## Abstract of Coverage

| **Policy #** | MHL-0016634 | **Effective** | 9/21/2022 - 9/21/2023 |
|---|---|---|---|

Forms

| Coverage | Limit | Co-Insurance | Deductible |
|---|---|---|---|
| Dwelling | $599,987.00 |  | $29,999.35 |
| Other Structures | $0.00 |  | $0.00 |
| Contents | $150,000.00 |  | $0.00 |
| ORDINANCE & LAW | $59,999.00 |  | $0.00 |

## Coverage - Dwelling

Coverage   $599,987.00        Not Applicable

|  | RC Detail | ACV Detail | Value | Loss | Claim |
|---|---|---|---|---|---|
| **Replacement Cost Value** | $0.00 |  | $0.00 |  |  |
| **Actual Cash Value** |  | $0.00 | $0.00 |  |  |
| **Total Estimated Loss** | $53,691.41 | $53,691.41 |  | $53,691.41 |  |
| Less Depreciation |  | ($7,394.19) |  |  |  |
| **ACV Loss** |  | $46,297.22 |  |  |  |
| Less Non-Recoverable Depreciation | ($0.00) |  |  |  |  |
| **Sub-Total** | $53,691.41 | $46,297.22 |  |  |  |
| Less Deductible Applied | ($29,999.35) | ($29,999.35) |  |  |  |
| **Adjusted Loss Amount** | $23,692.06 | $16,297.87 |  |  | $23,692.06 |
| **Recoverable Depreciation** | $7,394.19 |  |  |  |  |

**Coverage - ORDINANCE & LAW**

Coverage    $59,999.00    Not Applicable

| | RC Detail | ACV Detail | Value | Loss | Claim |
|---|---|---|---|---|---|
| **Replacement Cost Value** | $0.00 | | $0.00 | | |
| **Actual Cash Value** | | $0.00 | $0.00 | | |
| **Total Estimated Loss** | $3,984.43 | $3,984.43 | | $3,984.43 | |
| Less Depreciation | | ($219.22) | | | |
| **ACV Loss** | | $3,765.21 | | | |
| Less Non-Recoverable Depreciation | ($0.00) | | | | |
| **Sub-Total** | $3,984.43 | $3,765.21 | | | |
| Less Deductible Applied | ($0.00) | ($0.00) | | | |
| **Adjusted Loss Amount** | $3,984.43 | $3,765.21 | | | $3,984.43 |
| **Recoverable Depreciation** | $219.22 | | | | |

| | | | |
|---|---|---|---|
| **Total Loss & Claim** | | $57,675.84 | $27,676.49 |
| **Total Recoverable Depreciation** | $7,613.41 | | |

A copy of this document does not constitute a settlement of this claim.  The above figures are subject to insurance company approval.

**Accepted by** _____